| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RYAN S. COPE,

          Plaintiff,

   v.

NANCY A BERRYHILL, Acting Commissioner of Social Security,

          Defendant.

CASE NO. 3:17-CV-05084-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff Ryan S. Cope filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 6.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred in his treatment of Plaintiff's testimony and the lay witness testimony. Had the ALJ properly considered this evidence, the residual functional capacity ("RFC") may have included additional limitations. The ALJ's error is therefore not harmless, and this matter is reversed and

remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

FACTUAL AND PROCEDURAL HISTORY

On October 11, 2013, Plaintiff filed an application for DIB and SSI. *See* Dkt. 9, Administrative Record ("AR") 23. The application was denied upon initial administrative review and on reconsideration. *See* AR 23. ALJ James W. Sherry held a hearing on June 9, 2015. AR 42-69. At the hearing, Plaintiff amended his alleged disability onset date to June 1, 2013. AR 45. In a decision dated August 28, 2015, the ALJ determined Plaintiff to be not disabled. AR 23-34. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-4; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred: (1) by failing to explain why Plaintiff's combination of impairments did not meet or medically equal Listing 11.09; (2) in his treatment of the medical evidence; (3) by not giving clear and convincing reasons for finding Plaintiff's subjective symptom testimony not fully supported; (4) by failing to provide germane reasons to reject lay witness testimony; and (5) by making an RFC determination and Step Four findings that were not supported by substantial evidence. Dkt. 13, pp. 2-18.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

## I. Whether the ALJ properly determined Plaintiff's combination of impairments did not meet or equal Listing 11.09.

Plaintiff argues the ALJ improperly concluded Plaintiff's multiple sclerosis did not meet or medically equal Listing 11.09(A) or 11.09(C). Dkt, 13, pp. 7, 17.

At Step Three of the sequential evaluation process, the ALJ considers whether one or more of the claimant's impairments meets or equals an impairment listed in Appendix 1 to Subpart P of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). Each Listing sets forth the "symptoms, signs, and laboratory findings" which must be established in order for a claimant's impairment to meet the Listing. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) (citation omitted). If a claimant meets or equals a Listing, the claimant is considered disabled without further inquiry. *See* 20 C.F.R. § 416.920(d).

The burden of proof is on the claimant to establish that he meets or equals any of the impairments in the Listings. *See Tackett*, 180 F.3d at 1098. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." *Id.* at 1100 (citing 20 C.F.R. § 404.1526). A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508 (effective through March 26, 2017). It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." *Id.*; *see also* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (1996) (a Step Three determination must be made on basis of medical factors alone). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248, at *2 (1983). The ALJ "is not required to discuss the combined effects of a claimant's impairments or compare

them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart,* 400 F.3d 676, 683 (9th Cir. 2005).

Listing 11.09[1] states that a claimant's multiple sclerosis impairment meets or equals the listing when a claimant has:

> A. Disorganization of motor function as described in 11.04B; or
> B. Visual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or 12.02; or
> C. Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

20 C.F.R., Part 404, Subpt. P, App. 1, § 11.09 (effective Aug. 12, 2015 – May 23, 2016).

Plaintiff specifically asserts the medical evidence shows his symptoms and limitations meet or equal Listing 11.09(A) or 11.09(C). Dkt. 13, pp. 7, 17. In order to meet Listing 11.09(A), the following criteria must be met or medically equaled:

> Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R., Part 404, Subpt. P, App. 1, § 11.04(B) (effective Aug. 12, 2015 – May 23, 2016) (citing § 11.00(C)).

Listing 11.09(C) "deals with motor abnormalities which occur on activity." *Id.* at § 11.00(E). Further, Listing 11.09(C):

> is dependent upon (1) documenting a diagnosis of multiple sclerosis, (2) obtaining a description of fatigue considered to be characteristic of multiple sclerosis, and

---

[1] Although this Listing was amended after the ALJ's decision, Plaintiff concedes the applicable Listing is the text as it was in effect at the time of the ALJ's decision. Dkt. 13, p. 17 n.19 (citing 81 FR 43048-01, 4306 n.6 (2016)). As such, the Court cites and applies Listing 11.09 as it was in effect at the time of the ALJ's decision.

| | |
|---|---|
| 1 | (3) obtaining evidence that the system has actually become fatigued. The evaluation of the magnitude of the impairment must consider the degree of exercise and the severity of the resulting muscle weakness. |
| 2 | |

*Id.* at § 11.00(E).

At Step Two, the ALJ found Plaintiff's multiple sclerosis was a severe impairment. AR 25. At Step Three, the ALJ determined Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." AR 27. In relevant part, the ALJ found:

> The undersigned has considered all of the claimant's impairments individually and in combination but can find no evidence that the combined clinical findings from such impairments reach the level of severity contemplated in the listings . . . [Plaintiff's] multiple sclerosis does not meet or equal listing 11.09, Multiple Sclerosis, because the record does not demonstrate findings of: A. Disorganization of motion function; B. Visual or mental impairment; or C. Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by multiple sclerosis process.

AR 27-28 (emphasis added).

Plaintiff maintains the "ALJ erred by *failing to adequately explain why*" Plaintiff's combination of impairments "did not meet or medically equal Listing 11.09(A) or 11.09(C)." Dkt. 13, p. 17 (emphasis added). Yet throughout his decision, the ALJ discussed and summarized the objective medical evidence as it was relevant to Listing 11.09, including discussions of diagnostic imaging of Plaintiff's spine and brain, right-sided numbness, and decrease to light touch in his upper and lower right-side extremities. *See* AR 29-31. The ALJ also noted multiple physical examinations in which Plaintiff had "normal" muscle tests and motor strength. *See, e.g.*, AR 29-31 (despite right-sided numbness, "all muscle tests and reflexes were normal"; "normal strength in the upper and lower extremities"; "[o]ther 2014 medical evidence of records shows

the claimant's physical examinations were within normal limits . . . despite significant numbers of lesions"). Thus, contrary to Plaintiff's argument, the ALJ adequately "discussed and evaluated evidence supporting his conclusion" that Plaintiff's impairments did not meet Listing 11.09. *See Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (to satisfy Step three, an ALJ must "discuss and evaluate the evidence that supports [his] conclusion," though he need not do so under any particular heading). As such, the ALJ did not err at Step Three.

**II.         Whether the ALJ properly weighed the medical opinion evidence.**

Plaintiff asserts the ALJ erred in his assessment of the medical opinion evidence. Dkt. 13, pp. 2-8. In particular, Plaintiff argues the ALJ erred (1) in his assessment of the medical opinion evidence as a whole; (2) because his decision was not based on substantial evidence in light of new evidence; and (3) by giving great weight to non-examining physician, Dr. Elizabeth St. Louis, M.D. *Id.*

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

1. Medical Evidence as a Whole

Plaintiff maintains the ALJ erred in his treatment of the medical evidence as a whole. Dkt. 13, pp. 3-8.

The ALJ "need not discuss all evidence presented." *Vincent ex rel. Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984). However, the ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent*, 739 F.2d at 1395). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Id.* at 571.

In his Opening Brief, Plaintiff detailed the medical evidence from Dr. James B. Lee, M.D., Dr. Keiko K. Howard, D.O., Dr. Alma Deleon Glamzi, M.D., Dr. Joseph W. Regimbal, M.D., as well as evidence from Ms. Stephanie Berger, P.T. Dkt. 13, pp. 3-8. Plaintiff thereafter asserted the ALJ erred in his treatment of this evidence because it "shows [Plainitff] has multiple sclerosis, and it also supports his testimony about the symptoms he has been experiencing as a result of this impairment." *Id.* p. 6. Yet the ALJ found Plaintiff's multiple sclerosis was a severe impairment at Step Two. *See* AR 25. Moreover, Plaintiff's argument that this medical evidence supports Plaintiff's subjective symptom testimony is its own distinct argument, which the Court addresses in Section III of this Order.

Notably, despite his detailed summary of this evidence, Plaintiff failed to allege the ALJ erred in his treatment of Drs. Lee, Howard, Glamzi, Regimbal, or Ms. Berger. *See* Dkt. 13, pp. at 3-8. By failing to explain how the ALJ erred with regard to each particular opinion, Plaintiff failed to show how the ALJ's alleged mistreatment of this evidence was consequential to the RFC and the ultimate disability determination. Therefore, because Plaintiff failed to explain how the ALJ erred with respect to each particular opinion, the Court declines to consider

whether the ALJ erred regarding Drs. Lee, Howard, Glamzi, Regimbal, or Ms. Berger.[2] *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2007) (citation and internal quotation omitted) (the court will not "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief"); *see also Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only the error, but also that it affected his 'substantial rights.'").

    2. <u>New Evidence Presented to Appeals Council</u>

Plaintiff next contends the ALJ's decision was not based on substantial evidence in light of new evidence that was submitted to the Appeals Council. Dkt. 13, pp. 6-7.

When the Appeals Council considers new evidence in denying review of the ALJ's decision, "the new evidence is part of the administrative record." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60, 1162-63 (9th Cir. 2012). The district court must therefore consider this new evidence when determining whether the Commissioner's decision is supported by substantial evidence and free of legal error. *Id.*; *see also Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011).

In addition, harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard

---

[2] The only physician that Plaintiff specifically argued the ALJ treated improperly was Dr. St. Louis. Dkt. 13, pp. 7-8. The Court therefore considers the ALJ's treatment of Dr. St. Louis in this Order, below.

to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)).

The ALJ held the hearing on June 9, 2015. AR 42-69. On June 10, 2015, Plaintiff had an MRI of his cervical spine and thoracic spine. AR 683-88. Plaintiff submitted the MRI results Appeals Council, thereby making the results part of the administrative record. *See* AR 2, 5; *Brewes*, 682 F.3d at 1159-60.

Plaintiff maintains, citing *Brewes*, this new evidence shows he "is more limited than he was found to be by the ALJ" and thus, "the ALJ's decision is not supported by substantial evidence." Dkt. 13, pp. 6-7. Despite Plaintiff's assertion, this new evidence contained "normal" results. *See, e.g.*, AR 686-87 (cervical spine alignment normal; "no gross abnormalities" in paraspinal soft tissues; "normal" disc heights and signals in cervical spine; thoracic spinal alignment normal). Furthermore, any abnormal results were similar to MRI results from October 2014 that were already in the administrative record. *See id.* (T2 hyperintense lesions were "similar to prior" MRI from October 2014; "no new cord lesions" compared to previous MRI; mid thoracic disc degeneration "similar to prior" MRI).

Accordingly, because this new evidence contained no new results, this evidence was inconsequential to the ultimate disability determination and does not require reversal. *See Molina*, 674 F.3d at 1115.

3. <u>Dr. St. Louis</u>

Plaintiff maintains the ALJ erred in giving great weight to the opinion of non-examining physician, Dr. St. Louis. Dkt. 13, pp. 7-8.

A non-examining physician's opinion may constitute substantial evidence when it is consistent with other independent evidence in the record. *Tonapetyan v. Halter*, 242 F.3d 1144,

1149 (9th Cir. 2001). As such, an ALJ generally does not err in giving great weight to a non-examining physician when the physician's opinion is consistent with the record. *See Mitchell v. Colvin*, 642 Fed.Appx. 731, 732 (9th Cir. 2016). By contrast, a non-examining physician's opinion should not be given great weight when her opinion conflicts with other evidence in the record. *See, e.g.*, *Wedge v. Astrue*, 624 F.Supp.2d 1127, 1133 (C.D. Cal. 2008).

On March 12, 2014, Dr. St. Louis authored an opinion in which she found Plaintiff not disabled. *See* AR 87-96, 97-106. Dr. St. Louis did not examine Plaintiff, and instead reviewed reports and medical records to form her opinion. *See* AR 88-91, 98-101. Dr. St. Louis opined Plaintiff could occasionally lift and/or carry up to ten pounds, frequently lift and/or carry up to ten pounds, stand and/or walk for up to two hours, and sit for about six hours in an eight-hour work day. AR 92, 102. In addition, Dr. St. Louis determined Plaintiff could occasionally climb ramps and stairs, and could never climb ladders, ropes, or scaffolds. AR 92, 102. Dr. St. Louis also opined Plaintiff could frequently kneel and crawl, and occasionally balance, stoop, and crouch. AR 92, 102. Dr. St. Louis further found Plaintiff had limited ability to handle and finger, and could reach feel in unlimited amounts. AR 93, 103. Moreover, Dr. St. Louis stated Plaintiff should avoid moderate exposure to extreme heat and concentrated exposure to humidity. AR 93, 103. Dr. St. Louis stated Plaintiff's limitations were due to his multiple sclerosis. *See* AR 93-94, 103-104.

The ALJ summarized Dr. St. Louis's report and then gave it "great weight," stating:

> [her opinions are] consistent with the medical record demonstrating physical exam findings generally within normal range, diagnostic testing and imagery showing no acute findings from [Plaintiff's] multiple impairments, and symptoms well controlled with treatment. Furthermore, the record does not contain any persuasive opinion or other evidence that contradicts her conclusions.

AR 32-33.

Plaintiff argues the ALJ erred in giving great weight to Dr. St. Louis because "her opinion is in fact inconsistent with the clinical findings and MRI imagery." Dkt. 13, p. 7. Plaintiff accurately asserts the record contains evidence of Plaintiff's impaired gait and impaired sensation on his right side, and the ALJ acknowledged this evidence in his decision. *See* AR 29-31. Nevertheless, as previously explained, the ALJ likewise accurately summarized medical evidence showing Plaintiff's normal muscle tests and motor strength. *See* AR 29-31. In addition, Plaintiff acknowledges that no medical opinion in the record other than Dr. St. Louis's opinion contains "medical opinions regarding functional limitations." Dkt. 13, p. 8. Thus, contrary to Plaintiff's assertion, no medical opinion directly contradicts Dr. St. Louis's opinion with respect to Plaintiff's functional limitations.

Hence, in light of the medical record – which contains both notes of impairments as well as notes of normal muscle tests and motor strength – the ALJ's decision to give great weight to Dr. St Louis's opinion was supported by the record. *See Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted) ("if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence"). The ALJ therefore did not err by giving great weight to Dr. St. Louis's opinion.

### III. Whether the ALJ provided specific, clear and convincing reasons for finding Plaintiff's subjective symptom testimony not fully supported.

Plaintiff argues the ALJ erred in his evaluation of Plaintiff's subjective symptom testimony. Dkt. 13, pp. 8-13.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what

testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834 (citation omitted). Questions of credibility are solely within the ALJ's control. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). Moreover, the Court may not reverse a credibility determination where the determination is based on contradictory or ambiguous evidence. *Id.* at 579.

In a Disability Report – Adult, Plaintiff reported his conditions cause him pain and he stopped working because he was "[u]nable to do [the] required labor." AR 229-30. Plaintiff elaborated on this point at the hearing, explaining he was unable to work due to exhaustion, fatigue, and clumsiness. AR 53-54. In addition, Plaintiff reported he is unable to type or write due to numbness in his hands. AR 56-57. Furthermore, Plaintiff stated he struggles with walking and requires the use of a walker. AR 57-58. Plaintiff said he suffers from lower back pain. AR 58. Plaintiff also reported he can lift up to ten pounds, stand four or five minutes before needing to sit, and walk about seventy yards with the assistance of his walker. AR 33. Lastly, Plaintiff said he can sit for about thirty minutes before needing to get up, and his fatigue makes him nap for a quarter of the day. AR 66-67.

With respect to Plaintiff's testimony, the ALJ found Plaintiff's medically determinable impairments could be reasonably expected to cause the alleged symptoms. AR 29. However, the ALJ found Plaintiff's testimony "concerning the intensity, persistence and limiting effects of these symptoms [were] not fully credible." AR 29. In particular, the ALJ discounted Plaintiff's testimony because (1) Plaintiff was not currently receiving physical therapy despite doctor

recommendations, which "suggests his symptoms are not as significantly limiting as he alleges," and (2) Plaintiff's "allegations regarding the severity of his physical symptoms and limitations are not fully supported by the objective clinical findings and observations contained in the record." AR 29.

First, the ALJ discounted Plaintiff's subjective symptom testimony because Plaintiff was not receiving prescribed physical therapy at the time of the hearing. AR 29. When assessing a claimant's subjective symptom testimony, an ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). However, an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." SSR 96-7p at *7 (1996);[3] *see also Mitchell v. Colvin*, 584 Fed.Appx. 309, 314 (9th Cir. 2014) (citing SSR 96-7p) (ALJ erred, in part, by failing to ask plaintiff about "perceived inconsistencies in following recommended treatment" even though the ALJ "relied on those lapses to discredit him").

At the hearing, Plaintiff testified that he recently stopped going to physical therapy because he was receiving Tysabri, an infusion drug which lowers his immune system, and as such, his doctors recommended that he not leave his house. AR 59-60. The ALJ failed to mention this explanation in his decision. *See* AR 29, 30. Because the ALJ's decision does not reflect that he considered why Plaintiff stopped attending physical therapy, the ALJ erred in discounting Plaintiff's testimony for this reason. *See* SSR 96-7p at *7; *see also Mitchell*, 584 Fed.Appx. at 314 (citing SSR 96-7p) (a claimant's explanation for failure to follow prescribed

---

[3] Although SSR 96-7p was superseded after the ALJ's hearing, the Court applies SSR 96-7p in this case because it was in effect at the time of the ALJ's decision.

treatment is relevant when an ALJ discredits the claimant's testimony for failure to follow treatment).

Second, the ALJ discounted Plaintiff's subjective symptom testimony because he found Plaintiff's testimony not supported by the objective medical evidence. *See* AR 29. A claimant's pain testimony cannot be rejected "solely because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting *Bunnell v. Sullivan*, 947 F.3d 341, 346-47) (9th Cir. 1991) (en banc)). This is true for a claimant's other subjective complaints. *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (holding that, although *Bunnell* was couched in terms of subjective complaints of pain, its reasoning extends to non-pain complaints). Here, the ALJ erred by discounting Plaintiff's testimony in light of the objective medical evidence. *See* AR 29. Because this is the only remaining reason for discounting Plaintiff's testimony, the ALJ did not provide legally sufficient reasons for discounting Plaintiff's testimony.

For the above stated reasons, the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. Had the ALJ properly considered Plaintiff's subjective symptom testimony, the RFC and hypothetical questions posed to the vocational expert ("VE") may have included additional limitations. For example, the RFC and hypothetical questions may have included the limitations that Plaintiff cannot type or write, can stand for four or five minutes before needing to sit, and can sit for thirty minutes before needing to stand. The RFC and hypothetical questions did not contain these limitations. Therefore,

because the ultimate disability determination may have changed, the ALJ's error is not harmless and requires reversal.[4]

### IV. Whether the ALJ provided germane reasons to discount the lay witness testimony.

Plaintiff asserts the ALJ erred in his treatment of the lay witness evidence. Dkt. 13, pp. 15-17.

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account." *Lewis*, 236 F.3d at 511. As such, lay witness testimony "cannot be disregarded without comment." *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted). To reject lay witness testimony, the ALJ must "expressly" disregard such testimony and provide "reasons germane to each witness for doing so." *Lewis*, 236 F.3d at 511. In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even if the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512.

Krista K. Wyle, who lives with and provides care for Plaintiff, submitted a third party function report on Plaintiff's behalf. AR 239-46. Ms. Wyle reported Plaintiff is unable to work because of "limited physical ability due to multiple sclerosis." AR 239. Ms. Wyle stated Plaintiff's conditions make him fairly limited in his physical abilities and stamina. AR 240. She reported Plaintiff helps feed and care for her cats, although she assists him in the pet care. AR 240. In addition, Ms. Wyle said Plaintiff's conditions affect his ability to bathe, as he is "more

---

[4] The Court notes the Social Security Administration has changed the way it analyzes a claimant's credibility since the ALJ issued his decision in this case. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); 2016 WL 1237954 (Mar. 24, 2016). On remand, the ALJ is directed to apply SSR 16-3p when evaluating Plaintiff's subjective testimony.

off balance" and "has fallen a few times in recent weeks/months." AR 240. She said Plaintiff has a harder time shaving than he used to because of "decreased ability for fine motor control." AR 240. With respect to Plaintiff's ability to prepare meals, Ms. Wyle reported Plaintiff "can still cook" but "needs assistance with things like chopping or removing things from the oven." AR 241. She stated Plaintiff prepares meals "daily" when he is not fatigued, although he is "slower" and "clumsier" than he used to be. AR 241. Furthermore, Ms. Wyle stated Plaintiff is able to help with cleaning and laundry, though he is "slower than in the past" and needs "assistance carrying things" due to lower strength and stamina. AR 241. Ms. Wyle moreover reported that while Plaintiff is capable of driving, he does not feel secure or comfortable driving due to his multiple sclerosis. AR 242.

Ms. Wyle said Plaintiff is able to shop in stores for food and household supplies "when needed," but he is slow in doing so. AR 242. Additionally, Ms. Wyle reported Plaintiff is "less prone to doing" his hobbies or socializing because he requires more sleep and gets more fatigued than he used to. AR 243-44. She further stated Plaintiff's condition affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and use his hands due to poor balance, stamina, dexterity, and strength since his multiple sclerosis onset. AR 244. Ms. Wyle said Plaintiff is able to walk "short/mid distances." AR 244.

The ALJ gave "partial weight" to Ms. Wyle's opinion,[5] stating:

> [T]he undersigned finds Ms. Wyle's statements generally credible. She lives with the claimant and is able to observe the claimant's daily activities. Moreover, her statements are generally consistent with the medical evidence of record which indicates that

---

[5] In the paragraph considering Ms. Wyle's opinion, the ALJ wrote "*Ashely Dixon's opinion* has been assigned partial weight." AR 33 (emphasis added). However, there does not appear to be anyone named Ashley Dixon in this case. Given that the ALJ made this assertion in the paragraph regarding Ms. Wyle's opinion, the Court presumes this name was a typographical error and the ALJ intended to give partial weight to Ms. Wyle's opinion. Plaintiff also did not mention or take issue with this error. *See* Dkt. 13.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 16

although [he] has pain, numbness, and fatigue associated with MS, he still remains able to perform activities of daily living.

AR 33. The ALJ found Ms. Wyle's testimony "generally credible" given that she lives with Plaintiff, observes his daily activities, and her statements were consistent with the medical record. AR 33. Hence, while the ALJ gave "partial weight" to Ms. Wyle's opinion, he did not state why her opinion was worthy of only partial weight. AR 33. The ALJ therefore erred, as he failed to give any reason for discounting Ms. Wyle's testimony. *See Van Nguyen*, 100 F.3d at 1467 (lay testimony "cannot be disregarded without comment").

The lay witness testimony described limitations beyond those in Plaintiff's RFC and the hypothetical questions posed to the VE. For example, Ms. Wyle reported Plaintiff suffers from fatigue and has decreased ability for fine motor control and dexterity. The RFC and hypothetical questions posed to the VE did not contain limitations reflecting these restrictions. Because the ultimate disability determination may have changed, the ALJ's error was not harmless and requires reversal.

**V. Whether the RFC and the ALJ's Step Four findings were supported by substantial evidence.**

Additionally, Plaintiff argues the RFC assessed by the ALJ and the ALJ's Step Four findings were "legally erroneous and not supported by substantial evidence." Dkt. 13, p. 18.

The ALJ committed harmful error by failing to properly consider Plaintiff's subjective symptom testimony and the lay witness testimony. *See* Sections III & IV, *supra*. Accordingly, the ALJ must reassess Plaintiff's RFC on remand. *See* SSR 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and address medical source opinions"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). As the ALJ must reassess Plaintiff's RFC, he must also re-

evaluate the findings at Step Four (and, if necessary, Step Five) in light of the RFC. *See Watson v. Astrue*, 2010 WL 4269545, at *5 (C.D. Cal. Oct. 22, 2010) (finding the RFC and hypothetical questions posed to the VE defective when the ALJ did not properly consider two physicians' findings).

**VI. Whether the case should be remanded for an award of benefits.**

Lastly, Plaintiff requests the Court remand his claim for an award of benefits. Dkt. 13, pp. 18-19.

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

The Court has determined, on remand, the ALJ must re-evaluate this entire matter properly considering Plaintiff's subjective symptom testimony and the lay witness testimony. Therefore, remand for further administrative proceedings is appropriate.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 13th day of December, 2017.

David W. Christel
United States Magistrate Judge